

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-26-1996

# Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prod. Co.

Precedential or Non-Precedential:

Docket 94-2058

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

## Recommended Citation

"Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prod. Co." (1996). *1996 Decisions.* Paper 252.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/252

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

-----------

No. 94-2058

-----------

VETROTEX CERTAINTEED CORPORATION,

Appellant

v.

CONSOLIDATED FIBER GLASS PRODUCTS COMPANY

----------

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 94-2947)

----------

Argued Monday, December 11, 1995[0]

BEFORE:  ROTH, LEWIS and GARTH, Circuit Judges

----------

(Opinion filed January 26,  1996)

----------

Jon A. Baughman, Esq. (Argued)
Pepper, Hamilton & Scheetz
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103-2799

Attorney for Appellant

---

[0]This matter was originally heard on June 27, 1995 before Judges Hutchinson, Roth, and Garth.  Because Judge Hutchinson died prior to an opinion being rendered, the Panel was reconstituted to include Judge Lewis, and the appeal was reargued.

1

Virginia H. McMichael, Esq. (Argued)
Dilworth, Paxson, Kalish &
Kauffman
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103

Wesley G. Beverlin, Esq.
Knapp, March, Jones & Duran
515 South Figueroa Street
Suite 1400, Manulife Plaza
Los Angeles, CA    90071

Attorneys for Appellee

----------

OPINION OF THE COURT

----------

GARTH, Circuit Judge:

Plaintiff-appellant Vetrotex CertainTeed Corporation ("Vetrotex"), a Pennsylvania corporation, brought suit in the federal district court for the Eastern District of Pennsylvania against defendant-appellee Consolidated Fiber Glass Products Company ("Conglas"), a California corporation. The issue presented in this appeal is whether the district court properly dismissed the complaint of Vetrotex for lack of personal jurisdiction. Because it is not contested that general jurisdiction does not lie, and because we find that Conglas has not purposefully directed its activities toward Pennsylvania for purposes of specific jurisdiction, we will affirm.

I.

2

Vetrotex is a Pennsylvania corporation engaged in the manufacture and sale of various fiber glass reinforcement products. Vetrotex, which was incorporated in March of 1991, is a wholly-owned subsidiary of CertainTeed Corporation ("CertainTeed"), another Pennsylvania corporation. Vetrotex is a national corporation with facilities and offices in several states, including California. Conglas is a California corporation engaged in the manufacture of fiber glass roofing products, including fiber glass mats. Conglas has no offices, employees or representatives in Pennsylvania, nor has it ever sold any of its products in Pennsylvania, or engaged in sales to distributors or other third parties who sell Conglas products in Pennsylvania.

Between 1980 and 1989, Conglas and CertainTeed engaged in sporadic contracts for fiber glass products, which culminated in a letter dated May 19, 1989 from CertainTeed to Conglas, stating that CertainTeed would not be able to supply all of Conglas's needs for glass and urging Conglas to go to another vendor for glass. The CertainTeed letter concluded by stating: "Finally, Jack, I want to thank you for our business relationship over the past years. I plan on continuing this contact for none of us can foretell the future and its opportunities." After this arrangement was terminated, Conglas had no further business relationship with CertainTeed.[0]

_____

[0]Between May of 1989 and February of 1991, the record reveals no relationship between Conglas and CertainTeed/Vetrotex. Indeed, the prior relationship between the parties had ended by 1989 and a new relationship began in 1991 when CertainTeed/Vetrotex

In February of 1991, CertainTeed again found itself with a supply of chopped strands to sell, and it communicated with Conglas to ascertain if Conglas would be interested in purchasing "44E" chopped strand. During the week of February 11, 1991, CertainTeed met with representatives of Conglas in California to solicit Conglas's purchase of CertainTeed's fiber glass materials. On February 25, 1991, CertainTeed wrote and forwarded an agreement to Conglas in California. Upon receiving the letter, Conglas executed the agreement and returned it to CertainTeed's headquarters in Valley Forge, Pennsylvania (the "1991 Supply Agreement").

In March of 1991, Vetrotex was incorporated as CertainTeed's wholly-owned subsidiary in charge of fiber glass reinforcement products operations.

In January of 1992, representatives of CertainTeed/Vetrotex flew to California and met with Conglas to discuss a continuation of CertainTeed's agreement to sell chopped strands to Conglas. At that meeting, the essential terms of a

solicited business from Conglas and entered into the 1991 and 1992 Supply Agreements. Those agreements, as discussed in text, were initiated by CertainTeed/Vetrotex and all the contacts with respect to those agreements were California contacts.

It was obviously for this reason that the parties joined issue only with respect to specific jurisdiction rather than general jurisdiction, the latter of which would have involved the various pre-1989 matters with which Judge Roth is concerned and which we read as the premise for the dissent.

In light of the new relationship initiated by Vetrotex in 1991 and the parties' acknowledgement that Burger King's specific jurisdiction teachings control our disposition, we attach little relevance to the general jurisdictional elements emphasized by the dissent. General jurisdiction was not a theory urged by Vetrotex.

new agreement were negotiated between Conglas and CertainTeed/Vetrotex. Conglas did not send representatives to Pennsylvania to meet with Vetrotex. Conglas did, however, place some telephone calls to CertainTeed/Vetrotex's offices in Valley Forge, Pennsylvania in the course of negotiating the renewal of the 1991 Supply Agreement

On March 13, 1992, CertainTeed/Vetrotex and Conglas renewed the 1991 Supply Agreement (now the "1992 Supply Agreement"). The 1992 Supply Agreement was prepared by CertainTeed/Vetrotex and sent to Conglas in California, where it was executed. The 1992 Supply Agreement provided for a two-year contract period that would automatically be renewed for an additional one-year period commencing April 1, 1994, unless canceled upon sixty-days notice.

Under the 1992 Supply Agreement, Vetrotex agreed to ship fiber glass material directly from its plant in Wichita Falls, Texas, to Conglas's manufacturing facility in Bakersfield, California. Vetrotex's invoicing for the product sold under the 1992 Supply Agreement was handled by Vetrotex's Southern California office, and all payments for the fiber glass material were sent to Vetrotex's office in Los Angeles, California. Conglas's primary contact at Vetrotex was Jerry Leland, a sales representative working out of Vetrotex's Santa Ana, California office.

In 1993, Vetrotex decided to withdraw from the fiber glass chopped strand business and sought to terminate its contract with Conglas. Vetrotex claims that it canceled the 1992

5

agreement by telephone on December 2, 1993, more than sixty days prior to the April 1, 1994 deadline. According to Conglas, it was only on March 23, 1994 that Vetrotex telephoned Conglas in California with the information that Vetrotex would not sell any more fiber glass chopped strand product to Conglas after March 31, 1994. Vetrotex ceased delivery of 44E strand, and Conglas withheld payment on outstanding invoices.

On May 12, 1994, Vetrotex brought the present diversity action against Conglas in the Eastern District of Pennsylvania, seeking to recover $303,595.35 in withheld payments from Conglas. Shortly thereafter, Conglas sued Vetrotex in California state court, seeking damages for breach of the 1992 Supply Agreement. Vetrotex then removed the California action to the Central District of California, where it is currently stayed pending the resolution of this appeal. Vetrotex has not yet counterclaimed in the California action, but admitted at oral argument before us that there is no impediment to its filing a counterclaim in that action.

On July 5, 1994, Conglas moved to dismiss Vetrotex's Pennsylvania action for lack of personal jurisdiction or, alternatively, for improper venue. On October 18, 1994, the district court for the Eastern District of Pennsylvania issued a memorandum and order entered on October 20, 1994, dismissing Vetrotex's complaint without prejudice for lack of personal jurisdiction.

The district court found the relevant and dispositive facts, which we recite in text, _infra_, to be undisputed.

6

Accordingly, the district court concluded that Conglas's contacts with Pennsylvania were "marginal and were not directed at Pennsylvania to benefit from its laws" and held that to exercise jurisdiction over Conglas "would offend traditional notions of fair play and substantial justice." Id. Vetrotex appealed.

II.

A.

"Whether personal jurisdiction may be exercised over an out-of-state defendant is a question of law, and this court's review is therefore plenary." Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc., 983 F.2d 551, 554 (3d Cir. 1993) (citing Mesalic v. Fiberfloat Corp., 897 F.2d 696, 698 (3d Cir. 1990)). We review any factual findings made by the district court for clear error. Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1220 (3d Cir. 1992).

A district court sitting in diversity applies the law of the forum state in determining whether personal jurisdiction is proper. Fed. R. Civ. P. 4(e). Pennsylvania's long-arm statute provides that its reach is coextensive with the limits placed on the states by the federal Constitution. 42 Pa. Cons. Stat. Ann. § 5322(b) (1981). We therefore look to federal constitutional doctrine to determine Conglas's susceptibility to personal jurisdiction in Pennsylvania. The due process clause of the Fourteenth Amendment places limits on the power of a state to assert personal jurisdiction over a nonresident defendant. Pennoyer v. Neff, 95 U.S. 714, 733 (1877).

7

The due process limit to the exercise of personal jurisdiction is defined by a two-prong test. First, the defendant must have made constitutionally sufficient "minimum contacts" with the forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (the "constitutional touchstone" of personal jurisdiction is "whether the defendant purposefully established 'minimum contacts' in the forum State"). The determination of whether minimum contacts exist requires an examination of "the relationship among the forum, the defendant and the litigation," Shaffer v. Heitner, 433 U.S. 186, 204 (1977), in order to determine whether the defendant has "'purposefully directed'" its activities toward residents of the forum. Burger King, 471 U.S. at 472 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)). There must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). Second, if "minimum contacts" are shown, jurisdiction may be exercised where the court determines, in its discretion, that to do so would comport with "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310 (1945); Farino, 960 F.2d at 1222.

8

B.

Vetrotex alleged that the district court had specific jurisdiction over Conglas. "Specific jurisdiction is invoked when the cause of action arises from the defendant's forum related activities," North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 690 (3d Cir. 1990), cert. denied, 498 U.S. 847 (1990); see Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414 n.8 (1984); Dollar Sav. Bank v. First Sec. Bank of Utah, N.A., 746 F.2d 208, 211 (3d Cir. 1984), such that the defendant "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Vetrotex does not allege general jurisdiction.[0]

As is evident from the complaint, this action concerns only Conglas's alleged breach of the 1992 Supply Agreement. The 1992 Supply Agreement, standing alone, is an insufficient ground upon which to exercise specific personal jurisdiction over Conglas. See Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993) ("[A] contract alone does not 'automatically establish sufficient minimum contacts in the other party's home forum.'") (quoting Burger King, 471 U.S. at 478); Mellon Bank (East) v. DiVeronica Bros.,

---

[0]"General jurisdiction is invoked when the plaintiff's cause of action arises from the defendant's non-forum related activities." North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 690 n.2 (3d Cir. 1990). To establish general jurisdiction, the plaintiff must show that the defendant has maintained "continuous and systematic" contacts with the forum. See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414 n.9 & 416 (1984); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 n.15 (1985).

9

Inc., 983 F.2d 551, 557 (3d Cir. 1993) ("Contracting with a resident of the forum state does not alone justify the exercise of personal jurisdiction over a non-resident defendant.") (citing Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1222 (3d Cir. 1992)).

In determining whether specific jurisdiction exists, however, we consider not only the contract but also "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Burger King, 471 U.S. at 479.

III.

A.

The facts underlying the present case are not in dispute. Vetrotex solicited Conglas to obtain the 1991 Supply Agreement by telephone and by personal visits to Conglas headquarters in California.[0] Conglas did not solicit the 1991 Supply Agreement, and no Conglas personnel ever visited Pennsylvania. Conglas signed the 1991 Supply Agreement in California and sent it to CertainTeed in Pennsylvania. Similarly, with respect to the 1992 Supply Agreement, officers of CertainTeed flew to California to negotiate that contract. The 1992 Supply Agreement was prepared by CertainTeed and sent to Conglas in California, where it was executed. No product was

_____

[0]Even though the complaint does not mention the 1991 Supply Agreement, we find it to be relevant as a "prior negotiation" to the 1992 Supply Agreement, which had renewed the 1991 Supply Agreement.

10

shipped from, through, or to Pennsylvania.  Instead, the chopped strand was manufactured in Texas and shipped directly from Vetrotex's plant in Texas to Conglas's facility in California. Vetrotex handled all of the transportation arrangements and paid the transportation costs.  Vetrotex's invoicing for product sold under the 1992 Supply Agreement was handled by Vetrotex's California office.  Conglas made all payments for goods to Vetrotex's California office.

The district court found, among other things that the following facts were not in dispute:

> Vetrotex solicited Conglas to obtain the 1991-92 contract by telephone and by personal visits to Conglas headquarters in California. The parties engaged in telephone communication prior to entering into the 1991-92 contract.  Conglas signed the disputed contract in California and sent it to Vetrotex in Pennsylvania.  Conglas made all payments for goods to Vetrotex CertainTeed's California office.  Under the disputed contract, Vetrotex did not deliver any goods to Conglas in Pennsylvania.

(Memorandum and Order entered October 20, 1994 at 4). Understandably, Vetrotex agreed at oral argument that none of these findings of fact are clearly erroneous.  See North Penn Gas v. Corning Natural Gas, 897 F.2d 687, 688 (3d Cir. 1990) ("A determination of minimum contacts is based upon findings of fact. As such, the district court's factual findings will not be disturbed unless clearly erroneous.").  The district court also found that Vetrotex "has not shown solicitation, advertisement, or delivery by Conglas in Pennsylvania since 1989."  Id. at 3.

11

The only contacts that Conglas had with Pennsylvania consisted of some telephone calls and letters written to Vetrotex in Pennsylvania. However, this Court has recognized that "informational communications in furtherance of [a contract between a resident and a nonresident] does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant]." Sunbelt Corp. v. Noble, Denton & Assoc., Inc., 5 F.3d 28, 32 (3d Cir. 1993) (citing Stuart v. Spademann, 772 F.2d 1185, 1193 (5th Cir. 1985) (stating that "an exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking the benefits and protection of the forum state's laws")).

Thus, in the present case, Conglas was merely a "passive buyer" of Vetrotex's product.[0] We hold that the undisputed circumstances attending Conglas's 1991 and 1992 Supply Agreements with Vetrotex do not support the conclusion that Conglas "purposefully availed" itself of the privilege of doing business in Pennsylvania for purposes of the district court's

_____

[0]The Eighth Circuit has recognized that "reaching out" is particularly difficult to find where the nonresident defendant is a buyer, rather than a seller, of the resident plaintiff's products. See Bell Paper Box, Inc. v. Trans Western Polymers, Inc., 53 F.3d 920, 922 (8th Cir. 1995). This distinction is even more telling when the defendant is a "passive" buyer, i.e. one which has been solicited as a customer of the plaintiff. See Stewart, A New Litany of Personal Jurisdiction, 60 U. Colo. L. Rev. 5, 45-46 (1989). The First Circuit, for instance, requires a showing that the defendant's forum-related activities in contract cases were "instrumental in the formation of the contract." United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992).

12

exercise of personal jurisdiction over Conglas.  See Sunbelt

Corp., 5 F.3d at 32 (holding that a Pennsylvania corporation's

contract with a Texas corporation and post-contract telephone and

facsimile communications with the same were insufficient to show

"purposeful availment" of the privilege of doing business in

Texas, for purposes of the Texas long-arm statute, the latter of

which is co-extensive with the reach of the federal

constitution).[0]

The instant case is distinguishable from other cases

where jurisdiction over a nonresident defendant has been premised

largely on the defendant's contract with a resident of the forum

state.  For instance, this is not a case where the defendant

solicited the contract or initiated the business relationship

leading up to the contract.  Compare Mellon Bank (East) PSFS,

Nat'l Ass'n v. Farino, 960 F.2d 1217 (3d Cir. 1992).  Nor is this

a case where the defendant sent any payments to the plaintiff in

the forum state, compare North Penn Gas v. Corning Natural Gas,

897 F.2d 687, 690-91 (3d Cir. 1990), or where the defendant

engaged in extensive post-sale contacts with the plaintiff in the

forum state.  Compare Mesalic v. Fiberfloat Corp., 897 F.2d 696,

700 (3d Cir. 1990) (after selling a boat to New Jersey buyer,

---

[0]Vetrotex also argues that the fact that the invoices as distinct
from the general Supply Agreements, provided as a term and
condition, that they (the invoices) were to be governed by and
should be construed in accordance with Pennsylvania law, is
relevant to personal jurisdiction over this case.  We disagree.
The choice of law provisions pertain only to the individual sales
contracts for each shipment of fiber glass chopped strand, and we
do not find them relevant to our jurisdictional analysis of the
underlying Supply Agreements.

13

defendant sent written correspondence to the buyer's New Jersey residence, delivered the boat to New Jersey, and attempted to repair the boat in New Jersey).

B.

Vetrotex argues that the relationship that existed between Conglas and CertainTeed in the 1980s are also relevant as "prior negotiations" or "course of dealing" with respect to the 1992 Supply Contract under Burger King. Burger King's reference to "prior negotiations," "future consequences," "terms of the contract," and "course of dealing," however, clearly contemplates dealings between the parties in regard to the disputed contract, not dealings unrelated to the cause of action. In Burger King, the Court found specific jurisdiction over a Michigan franchisee, Rudzewicz, in the franchisor Burger King's home state, Florida, where "Rudzewicz deliberately reached out beyond Michigan and negotiated with a Florida corporation," id. at 479–80, to enter into a "carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts." Id. at 480.

In the present case, the negotiations that occurred between Vetrotex and CertainTeed in the 1980s are unrelated to the 1992 Supply Contract and are not relevant to specific jurisdiction.[0] See International Shoe, 326 U.S. at 319 (the cause of action must "arise[] out of" or "relate[] to" the defendant's contacts with the forum); Helicopteros, 466 U.S. at 414 n.8; Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472

---

[0]As earlier noted in text, Vetrotex has argued this appeal only on the issue of specific, and not general, jurisdiction.

14

(1985); C.L. Grimes v. Vitalink Communications Corp., 17 F.3d 1553, 1559 (3d Cir.), cert. denied, 115 S. Ct. 480 (1994); Dollar Sav. Bank v. First Sec. Bank of Utah, N.A., 746 F.2d 208, 211 (3d Cir. 1984).

Vetrotex would characterize the "thirteen-month hiatus" in the parties' dealings from 1989 to 1991 as a mere interruption in an ongoing course of dealing. The district court did not agree, nor do we. The relationship between the parties in which CertainTeed supplied Conglas with fiber glass chopped strands was terminated by CertainTeed's letter of May 19, 1989, which urged Conglas to look elsewhere for suppliers. The 1991 Supply Agreement (renewed by the 1992 Supply Agreement at issue here) began a new relationship between the parties, separate and apart from the prior relationship. There is no evidence in the record that the parties understood the 1991 and 1992 Supply Contracts to be merely a continuation of the relationship that the parties had in the 1980s.[0]

Conglas has not "purposefully availed itself" of the privilege of doing business in Pennsylvania for purposes of establishing the "minimum contacts" required for specific jurisdiction. Nor has Vetrotex established "minimum contacts" on any other grounds between Conglas and Pennsylvania for purposes

_____

[0]Thus, we find Associated Business Telephone Systems Corp. v. Greater Capital Corp., 861 F.2d 793, 797 (3d Cir. 1988), to be distinguishable. In that case, we held that a district court in New Jersey had specific jurisdiction over a California corporation that had entered into a contract with a New Jersey corporation. However, the contract there provided for a ten-year life and created continuing obligations between the two companies.

15

of specific jurisdiction.[0]  Accordingly, we hold that the assertion of jurisdiction over Conglas would violate the fundamental dictates of due process.

## IV.

We will affirm the district court's dismissal of Vetrotex's complaint for lack of personal jurisdiction.

---

[0]Because we have concluded that Vetrotex has not made the threshold showing of sufficient minimum contacts with Pennsylvania to warrant the exercise of personal jurisdiction over Conglas, we need not address the secondary issue of whether exercising jurisdiction would comport with fair play and substantial justice. See Bell Paper Box, Inc. v. Trans Western Polymers, Inc., 53 F.3d 920, 921 (8th Cir. 1995) ("Due process requires both minimum contacts with the forum state and accord with the notions of 'fair play and substantial justice.'") (emphasis added) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)).

<u>Vetrotex CertainTeed Corporation v. Consolidated</u>

<u>Fiber Glass Products Company</u>

No. 94-2058

_____


ROTH, Circuit Judge, <u>Dissenting</u>:

As I read the Supreme Court's decision in <u>Burger King</u> <u>Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985), a court determining whether specific personal jurisdiction lies <u>must</u> consider prior business dealings between the parties. The majority opinion in this case, however, plays down the importance of a long business relationship established between Conglas and CertainTeed/Vetrotex during the 1980s. The majority focuses only on the final 1992 Supply Contract, <u>see</u> Majority Op. at ___ (slip op. at 14), despite the fact that the 1992 contract grew out of and was founded upon a thirteen-year-old working relationship.

I believe that the majority's narrow focus on the 1992 contract misinterprets the Supreme Court's rule in <u>Burger King</u> by refusing to consider the entire "course of dealings" between the relevant parties. The negotiations and dealings during the 1980s are, in my opinion, both relevant and related to the present cause of action. Because I would find that Conglas purposefully availed itself of the privilege of conducting business within Pennsylvania by virtue of its longstanding business relationship with Vetrotex, I write in dissent.

I.

In its discussion of the facts, the majority opinion emphasizes the 1991 and 1992 Supply Contracts and minimizes a significant course of dealings that occurred between the parties during the 1980s. These dealings affected the negotiation of the 1992 Supply Agreement and should not have been dismissed by the court as irrelevant. The omitted facts demonstrate that Conglas initiated and pursued a contractual relationship with CertainTeed at its Pennsylvania office and made sufficient voluntary contacts with Pennsylvania such that it should have "reasonably anticipate[d] being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

On April 30, 1980, Conglas sent CertainTeed a new product announcement for Conmat-90, a fiber glass roofing mat, expressly soliciting orders for the new product. In July 1981, Conglas representative Tom Pessel followed up on Conglas's April 1980 solicitation letter by visiting CertainTeed's Blue Bell, Pennsylvania office to discuss CertainTeed's requirements for fiber glass mat and Conglas's ability to satisfy those requirements. Following additional correspondence between Conglas and CertainTeed's Pennsylvania offices, CertainTeed placed an order for Conglas mats in November 1981.

In early 1982, Conglas and CertainTeed negotiated a formal agreement pursuant to which Conglas agreed to sell fiber glass mat to CertainTeed for the twelve-month period from February 1, 1982 through January 31, 1983. After the execution of the 1982 agreement, Conglas and CertainTeed began a collaborative effort to resolve quality control issues raised by

18

CertainTeed's testing of Conglas's fiber glass mats. This process resulted in regular communication between Conglas and CertainTeed personnel located in Pennsylvania, as well as a number of visits by Conglas representatives to the CertainTeed facility located in Blue Bell, Pennsylvania.

Conglas and CertainTeed entered into sales agreements similar to the 1982 agreement in February 1983 and May 1984. Despite these successive agreements, the Conglas mats failed to qualify for use in CertainTeed's roofing shingles. For this reason, CertainTeed terminated the 1984 agreement. Conglas later contacted CertainTeed in 1986 and 1989 regarding the sale to CertainTeed of fiber glass mats, but no further agreements were reached.

In addition to this business relationship involving the sale of Conglas fiber glass mats to CertainTeed, the parties also entered into a business relationship in which CertainTeed sold chopped fiber glass strands to Conglas. Although the record is devoid of any written agreements documenting sales of chopped strands to Conglas during the 1980s, CertainTeed did produce correspondence between the parties pertaining to such activities. Correspondence in the record indicates that in 1987 and 1988 CertainTeed provided Conglas with a certain volume of chopped strands each month. On December 8, 1987, representatives of Conglas visited CertainTeed in Valley Forge, Pennsylvania. Among the topics discussed was CertainTeed's supply to Conglas of chopped strands.

19

CertainTeed's sale of chopped strands to Conglas was interrupted, apparently at the end of 1989, when CertainTeed was unable to meet Conglas's needs due to supply shortages. In February 1991, however, CertainTeed again found itself with chopped strands to sell. CertainTeed and Conglas entered into negotiations regarding the terms of a sales agreement. David Sharpe, a Vice President at CertainTeed, participated in these negotiations from his office in Valley Forge, Pennsylvania, and he forwarded a letter agreement (the "1991 Supply Contract") to Conglas in California from Pennsylvania. The 1991 Supply Contract is on CertainTeed letterhead with its Pennsylvania headquarters address prominently displayed. Upon receiving the 1991 Supply Contract, a Conglas representative executed the agreement and returned it to CertainTeed's Pennsylvania headquarters.

On March 13, 1992, in anticipation of the expiration of the 1991 Supply Contract, the parties entered into another agreement (the "1992 Supply Contract"). By this time CertainTeed's subsidiary, Vetrotex, had been incorporated. Pursuant to the 1992 Supply Contract, Vetrotex agreed to continue selling chopped fiber glass strands to Conglas. As noted in the majority opinion, Dick Sharpe received several telephone calls from Conglas at his Valley Forge, Pennsylvania, office in negotiating the terms of the 1992 Supply Contract. Like the 1991 Supply Contract, the 1992 Supply Contract is printed on Vetrotex/CertainTeed letterhead, displaying the company's Pennsylvania address.

20

Because this case involves a contract between interstate parties, the Supreme Court's opinion in Burger King is the analytical keystone. See Mellon Bank (East) PSFS, N.A. v. Farino, 960 F.2d 1217, 1222 (3d Cir. 1992). In upholding the district court's exercise of specific personal jurisdiction in Burger King, the Supreme Court noted that the minimum contacts inquiry is a "fair warning" requirement of due process, which is satisfied "if the defendant has 'purposefully directed' his activities at residents of the forum, and litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King, 471 U.S. at 472 (citations omitted). The Court explained:

> [W]ith respect to interstate contractual obligations, we have emphasized that parties who "reach out beyond one state and create continuing obligations with citizens of another state" are subject to regulation and sanctions in the other State for the consequences of their activities. . .. [W]here individuals "purposely derive benefit" from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities . . ..

Id. at 473-74 (citations omitted). Thus, under Burger King, parties taking the affirmative step of negotiating and entering into interstate contractual obligations will likely subject themselves to specific personal jurisdiction in the other state. The Court warned, however, that "an individual's contract with an out-of-state party alone [cannot] automatically establish

21

sufficient minimum contacts in the other party's home forum." <u>Id.</u> at 478 (emphasis in original). Such a mechanical test has been explicitly rejected.

Instead, when deciding the question of specific personal jurisdiction, the Supreme Court favors a "highly realistic" approach that takes into account factors such as "prior negotiations and contemplated future consequences," and "the terms of the contract and the parties' actual course of dealing." <u>Id.</u> at 479. The reality of the situation in this case is that CertainTeed/Vetrotex and Conglas were involved in a business relationship spanning more than ten years. Over those years, Conglas affirmatively solicited business with CertainTeed, repeatedly made phone calls to Pennsylvania, sent employees to visit CertainTeed's facilities in Pennsylvania, and mailed contracts to Pennsylvania to be signed. Additionally, Conglas deliberately involved itself in several contractual obligations with CertainTeed/Vetrotex, fully aware that these corporations were headquartered in Pennsylvania. Thus, the facts in the instant case reveal that Conglas is not being brought into Pennsylvania solely as a result of "random," "fortuitous," or "attenuated" contacts, nor as a result of the "unilateral activity of another party or third person." <u>Id.</u> at 475 (citations omitted). Rather, Conglas has knowingly and deliberately engaged in a pattern of contacts with Pennsylvania such that Conglas should have expected that it could be subject to litigation there.

III.

22

Until now, the question whether two parties' prior business relationships should be taken into account in determining the existence of specific personal jurisdiction has not been addressed by this court. As in all issues of personal jurisdiction, however, this question cannot be answered mechanically. Instead, each case must be individually evaluated in full to determine whether the parties' "actual course of dealing" is such that the nonresident party was effectively on notice that it might be haled into court in the other party's home forum. In the instant case, it is clear that Conglas, through its long history of dealing with CertainTeed and its subsidiary Vetrotex, engaged in repeated contacts with representatives and facilities located in Pennsylvania. By virtue of these extensive contacts, Conglas was on notice that it could be subject to litigation in Pennsylvania. Thus, the longstanding relationship between these parties is relevant and should have been taken into account in determining whether Conglas established sufficient minimum contacts in Pennsylvania. See, e.g., Reynolds Metals Co. v. FMALI, Inc., 862 F. Supp. 1496, 1498-99 (E.D. Va. 1994) (taking parties' continuing relationship into consideration in finding that specific personal jurisdiction was proper).

Accordingly, I dissent. I believe that, based on the entire course of dealings between the parties, Conglas had minimum contacts in Pennsylvania sufficient to allow the district court to exercise personal jurisdiction over Conglas. I would therefore reverse the district court's order dismissing

23

Vetrotex's complaint and remand this case to the district court for further proceedings.