BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, Martin G. Crothers, and George H. Tompkins, Plaintiffs

v.

UNITED TRANSPORTATION UNION, National Railway Labor Conference, CSX Transportation, Inc., Kansas City Southern, Norfolk Southern Railway Company, and Union Pacific Railroad Defendants

No. Civ.A. 04–5491.

United States District Court,
E.D. Pennsylvania.

June 9, 2005.

Roland P. Wilder, Jr., William R. Wilder, Baptiste & Wilder, P.C., Washington, DC, Thomas Herman Kohn, Markowitz & Richman, Philadelphia, PA, for Plaintiffs.

Clinton J. Miller, III, Cleveland, OH, Samuel J. Rosenthal, Barish Law Offices PC, Robert S. Hawkins, Klett, Lieber, Rooney and Schorling, Philadelphia, PA, Ralph J. Moore, Jr., Shea & Gardner, Washington, DC, for Defendants.

### Memorandum and Order

PRATTER, District Judge.

Defendant National Railway Labor Conference ("NRLC") moves pursuant to Federal Rule of Civil Procedure 12(b)(2) for dismissal of the claims against it in this case concerning allegations that the defendants conspired to violate the Railway Labor Act by negotiating and executing a letter of intent under collective bargaining agreements with the United Transportation Union. For the reasons discussed below, the motion will be granted.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiffs Martin Crothers and George Tompkins are employees of Defendant CSX and members of Plaintiff Brotherhood of Locomotive Engineers and Trainmen (the "Brotherhood"). Mr. Crothers is employed as a locomotive engineer and holds seniority in the classification of train service. Mr. Tompkins is trained as a locomotive engineer, but he performs service primarily in the train service craft or class. Messrs. Crothers and Tompkins assert that they are both citizens of Pennsylvania and reside in the Eastern District of Pennsylvania, and that the Brotherhood is an unincorporated labor organization with a principal place of business in Cleveland, Ohio.[1]

United Transportation Union ("UTU") is an unincorporated labor organization which is the collective bargaining representative for train service classification on the defendant railroads, and NRLC is a Washington, D.C.-based unincorporated association acting as the "designated agent" of the defendant railroads. NRLC represents railroads in labor negotiations and other labor-related activities, and acts as a collective bargaining agent[2] for freight railroads across the country, some of which do business in Pennsylvania. NRLC does not have an office in Pennsylvania, and aside from acting as the bargaining agent for certain railroads that do business in and employ residents of Pennsylvania, has no contacts within the Commonwealth.[3]

1. The parties do not appear to agree on the status and role of the Brotherhood in this case. The Plaintiffs assert that the Brotherhood is the collective bargaining representative for locomotive engineers employed by the railroad carrier defendants. *Complaint* at ¶ 3. The Defendants aver that the Brotherhood is a unit of the International Brotherhood of Teamsters. *Answer* at ¶ 3. The Defendants further deny that the Brotherhood has any members who are subject to the Letter of Intent that is the source of the dispute in this matter.

2. NRLC acts through the National Carriers' Conference Committee ("NCCC") as the multi-employer collective bargaining agent of the railroads under the Railway Labor Act.

3. The parties do not dispute that NRLC has only one office, which is located in the District of Columbia, and all of its employees are

The source of the present dispute is a Letter of Intent (the "LOI") between UTU and the Railroad Defendants that was executed in Washington, D.C. on November 1, 2004. NRLC signed the LOI on behalf of the Railroad Defendants.[4] The apparent purpose of the LOI was to address concerns of the UTU with respect to financial burdens it allegedly incurs from "representing and protecting the rights and interests of employees working (or holding seniority in) train service" who do not pay dues or provide any other financial support to UTU.[5] The LOI provides, among other things, that an engine service employee holding train service seniority who is not a member of the UTU shall be required to pay a "seniority maintenance fee" in "an amount equal to full monthly dues payable to UTU ... in order to retain train service seniority." *Letter of Intent* at ¶ 3. Failure to pay such dues could, pursuant to the terms of the LOI, result in the extinguishment of an employee's seniority. *Id.* The terms of the LOI apply to each of the defendant railroad carriers in this action.

Plaintiffs filed their complaint on November 24, 2004 alleging (1) that the LOI violates Section 2, Fourth of the Railway Labor Act (the "RLA"), in that it coerces employees into joining the UTU; (2) that by coercing employees to join, UTU has violated its duty of fair representation under the RLA and the remaining Defendants violated the RLA by conspiring with UTU in this coercion; (3) a state law claim for common law civil conspiracy; and (4) that a declaratory judgment that the LOI violates the RLA and is, therefore, *void ab initio* is warranted. In addition to declaratory relief, the Plaintiffs ask that the Court enjoin enforcement of the LOI, order Defendants to refund monies collected thereunder, and that all employees suffering injury as a result of the Defendants' conduct be made whole, including receipt of an award of compensatory damages, reinstatement, back pay and restoration of all benefits, including seniority rights. Defendant NRLC filed its motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) on January 19, 2005, asserting that there is no basis upon which the Court can exercise personal jurisdiction over it.[6]

## LEGAL ANALYSIS

### A. Standard of Review

In deciding a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the allegations of the complaint are taken as true. However, once a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits, or

---

employed in the District of Columbia. NRLC does not have any offices in Pennsylvania, it does not directly conduct business in Pennsylvania, and none of NRLC's employees reside in Pennsylvania. NRLC states that it has engaged in labor negotiations in the District of Columbia and "sometimes in Florida and other places," but has never engaged in such negotiations in Pennsylvania. NRLC does not have telephone listings in Pennsylvania or toll-free phone numbers for use by Pennsylvania residents, nor does it maintain a bank account in Pennsylvania, and does not target its business directly to Pennsylvania residents.

4. A copy of the Letter of Intent was attached as Exhibit 1 to the Complaint.

5. As stated in the Letter of Intent, UTU is a designated collective bargaining representative of a craft under the Railway Labor Act, and must represent every employee working or holding seniority in the craft with respect to contract bargaining/administration and claim and grievance handling. *Letter of Intent* at 1.

6. Although Defendants Kansas City Southern Railway Company and Union Pacific Railroad Company asserted in their answers that they are not subject to personal jurisdiction in Pennsylvania, they have not joined in the present motion to dismiss and have not filed their own equivalent motions.

competent evidence, sufficient contacts with the forum state to establish personal jurisdiction. *See Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996), *cert. denied*, 519 U.S. 1028, 117 S.Ct. 583, 136 L.Ed.2d 513 (1996). The plaintiff must establish those contacts with reasonable particularity. *See Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992). Once the plaintiff makes out a *prima facie* case in support of personal jurisdiction, the burden shifts to the defendant to establish that the presence of some other considerations would render exercise of personal jurisdiction unreasonable. *See Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 150 (3d Cir.1992).

## B. Personal Jurisdiction

Federal Rule of Civil Procedure 4(e) allows a district court to assert personal jurisdiction over a non-resident to the extent allowed by the law of the state in which it sits. *See Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir.1984). Pennsylvania's long-arm statute provides that a court may exercise personal jurisdiction over non-resident defendants "to the constitutional limits of the due process clause of the fourteenth amendment." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir.2001) (interpreting 42 PA. CONS.STAT. ANN. § 5322(b)).

Due process requires that (1) the defendant have "minimum contacts" with the forum state, and (2) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Remick*, 238 F.3d at 255 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). "Minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus in-

voking the benefits and protections of its laws.'" *Remick*, 238 F.3d at 255 (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985))).

A federal court may exercise personal jurisdiction over a defendant in one of two ways. General personal jurisdiction is appropriate when a plaintiff's cause of action "arises from the defendant's non-forum related activities," and a defendant's contacts with the forum are continuous and systematic. *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.*, 75 F.3d 147, 151 (3d Cir.1996); *see also Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 369 n. 1 (3d Cir.2002)(noting distinction); *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir.2001) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). In contrast, specific personal jurisdiction is invoked when the cause of action arises from the defendant's forum related activities. *Vetrotex*, 75 F.3d at 151.

In the present motion, NRLC asserts that this Court can exercise neither general nor specific personal jurisdiction over it because (1) NRLC has no contacts with Pennsylvania that comprise a "continuous and systematic part" of NRLC's general business, and therefore there is no basis for general jurisdiction; and (2) NRLC is not subject to specific personal jurisdiction because none of the NRLC's conduct allegedly giving rise to the Plaintiffs' claims took place in Pennsylvania. The Plaintiffs disagree, arguing that NRLC is subject to specific jurisdiction in this Court because "it purposefully directed its activities at Pennsylvania residents" by negotiating and entering into the LOI, which directly

affects the terms and conditions of employment for Pennsylvania residents.[7]

### 1. General Jurisdiction

NRLC first argues that this Court may not exercise general personal jurisdiction over it because it has no continuous and systematic contacts with Pennsylvania, either through itself as an agent of the railroads it represents, or by virtue of the fact that some of its members operate in Pennsylvania. NRLC also points out that the Complaint contains no allegations that such contacts exist. NRLC next argues that neither (1) its status as an agent of the railroads that operate in Pennsylvania nor (2) the fact that it has members operating in Pennsylvania establish enough contacts to confer general personal jurisdiction over it. *Support Memo* at 6, 7. Under either scenario, because NRLC does not appear to have any systematic, continuous and intentional business contacts within Pennsylvania, invocation of general jurisdiction will depend upon the extent to which NRLC exercises control over its members.

The Pennsylvania long-arm statute provides that general personal jurisdiction may be exercised over an unincorporated association if any of the following relationships exist: (1) the association was formed under or qualifies as a foreign entity under the laws of the Commonwealth; (2) the association consents to jurisdiction; or (3) the association carries on a continuous and systematic part of its general business within the Commonwealth. 42 Pa.C.S.A. § 5301(a)(3) (West 2004). NRLC was not formed under and does not qualify as a foreign entity under the laws of Pennsylvania, and it has not consented to jurisdiction here. Thus, for general jurisdiction to be appropriate, the Plaintiffs must establish that NRLC, in conducting its general business, has continuous and systematic contacts within the Commonwealth. Moreover, because general jurisdiction is based on a defendant's general contacts within a forum, and not the contacts related to the cause of action asserted, for general personal jurisdiction to lie, the Plaintiffs must demonstrate that NRLC's general contacts within a forum are "extensive and pervasive." *Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587, 589 (3d Cir.1982) (citing *Compagnie des Bauxites de Guinea v. Ins. Co. of North America,* 651 F.2d 877, 890 (3d Cir. 1981)).

The Court of Appeals for the Third Circuit has advised that a district court considering whether general jurisdiction over an unincorporated association is proper requires an inquiry into the quality and nature of the contacts between the association and the forum state. *Nehemiah v. Athletics Congress of the U.S.A.,* 765 F.2d 42, 47–8 (3d Cir.1985). Participation as an agent for a Pennsylvania company, absent other contacts, is generally not sufficient to support the exercise of general jurisdiction. *Bizarre Foods, Inc. v. Premium Foods, Inc.,* No. 02–9061, 2003 WL 21120690, at *4 (E.D.Pa. May 16, 2003). In *Bizzare Foods,* the court considered whether general jurisdiction could be exercised over a defendant that had no contacts with Pennsylvania other than as a

---

7. The Plaintiffs do not address NRLC's arguments with respect to general jurisdiction in their opposition to the motion. Rather, they present a general allegation in the Complaint that personal jurisdiction over the Defendants is appropriate because the Defendants either regularly conducted business in this district, maintained substantial contacts here, or because members of the UTU reside in this district. *Complaint* at ¶ 2. In the interest of completeness, the Court will consider whether the exercise of general personal jurisdiction over NRLC is appropriate in this case.

participant in a factoring agreement with another defendant who had allegedly breached an agreement with the plaintiff. In finding that such an agreement did not establish sufficient "continuous and systematic contacts" with Pennsylvania, the *Bizzare Foods* court noted that the absence of an office or employees in Pennsylvania, combined with the fact that the co-defendant conducted no business within the Commonwealth, precluded the exercise of general personal jurisdiction.

Under circumstances such as presented here, in keeping with the foregoing legal standards, absent "extensive and pervasive" contacts, such as the solicitation of business in a forum through advertising or engaging in pervasive marketing activities there, general jurisdiction ought not be exercised over an unincorporated association. *See, e.g., Abbott v. Stone Harbor Gardens,* No. 88–7216, 1989 WL 17631, at *3, (E.D.Pa. Feb.28, 1989) (finding that funding from Pennsylvania bank and sale of condominiums to Pennsylvania residents, absent engagement in "pervasive activities" in Pennsylvania, were insufficient contacts to establish general personal jurisdiction over New Jersey-based condominium association).

Such an analysis is consistent with standards applied outside of the Third Circuit. Exercise of general personal jurisdiction over an unincorporated association was directly addressed in *Donatelli v. National Hockey League,* 893 F.2d 459, 465 (1st Cir.1990), a case that is instructive here. In *Donatelli,* the court addressed whether "the legal/institutional relationship between an unincorporated association and its members" was enough to establish jurisdiction when the member, and not the association, has significant contacts with the plaintiff's chosen forum.[8] After a thorough review of the case law addressing similar relationships, such as parent and subsidiary corporations and partnerships, the court concluded that when considering whether general jurisdiction is appropriate over an unincorporated association, a court must assess: (1) the nature of the legal and institutional relationships between the particular association and its constituents; (2) the degree of control exercised by the association over its members; and (3) the extent to which the members can be said to act for and on behalf of the association. *Donatelli,* 893 F.2d at 468.

■ Using the *Donatelli* rubric, addressing the issue of general jurisdiction in this case, the Court will consider whether NRLC's relationships with its member organizations are of such a character and are sufficient to establish extensive and pervasive contacts in Pennsylvania. The circumstances here lead to the conclusion that there is no means to exercise general personal jurisdiction over NRLC in this case. NRLC has no contacts in Pennsylvania that arise from its day-to-day business operations. Moreover, it does not exert any control over its members with respect to their decisions to, or how to, conduct business in Pennsylvania. The only contacts that NRLC can be construed to have with Pennsylvania arise indirectly from the LOI, in that the operation of the LOI will have an impact on employees who reside and work in Pennsylvania. Because these contacts are clearly specific to the LOI, they do not rise to the level of extensive contacts required to assert general personal jurisdiction.

### 2. Specific Jurisdiction

■ NRLC next argues that there is no specific personal jurisdiction over it in this

---

**8.** In *Donatelli,* the plaintiff was a professional hockey player challenging the NHL player draft and the League's failure to declare him a free agent.

case because (1) as the agent for the defendant railroads, NRLC is protected by the "fiduciary shield" doctrine from liability for activities taken on their behalf; (2) the negotiation and execution of the LOI which is the subject of this dispute did not take place in Pennsylvania; and (3) the potential foreseeability that the LOI might impact Pennsylvania residents is not sufficient to support exercise of jurisdiction, absent evidence that NRLC engaged in conduct within Pennsylvania or intentionally targeted its conduct at Pennsylvania.

Specific personal jurisdiction arises when a defendant's forum-related activities constitute the reason for the alleged injuries. *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.*, 75 F.3d 147, 151 (3d Cir.1996). When a defendant's contacts with a forum are related to the underlying cause of action such that a defendant would "reasonably anticipate being haled into court there," specific jurisdiction is appropriate. *Vetrotex Certainteed Corp.*, 75 F.3d at 151 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Such a relationship can be found where the defendant "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir.2000) (quoting *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174).

To establish that specific jurisdiction over a defendant is proper under the due process clause, a plaintiff must satisfy a two-part test. *IMO Industries, Inc. v. Kiekert, AG*, 155 F.3d 254, 259 (3d Cir. 1998). The plaintiff must first show that the defendant has constitutionally sufficient "minimum contacts" with the forum. *Id.* Second, a court must determine, in its discretion, whether exercising jurisdiction

over the defendant would comport with "traditional notions of fair play and substantial justice." *Id.* Where personal jurisdiction is grounded solely upon specific jurisdiction, a plaintiff's cause of action must be related to or arise out of the defendant's contacts with the forum. *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir.1996); *Bizarre Foods*, 2003 WL 21120690, at *4.

### a. Specific Personal Jurisdiction Based on Agency

NRLC argues that the conduct of the defendant railroads, for which it acted as an agent in negotiating the LOI, cannot be attributed to NRLC to assess the propriety of personal jurisdiction. In response, Plaintiffs argue that as an agent of a carrier, NRLC is specifically subject to the requirements of the Railway Labor Act and, therefore, personal jurisdiction over NRLC is proper under the statute.

In support of their argument, Plaintiffs cite to 45 U.S.C. § 152, Fourth, which states that "[n]o carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize or assist in organizing, the labor organization of their choice...." Plaintiffs further note that in *Norfolk and Western Railway Co. v. Brotherhood of Railroad Signalmen*, 164 F.3d 847, 852 (4th Cir.1998), the court found the corporate parent of two defendant railroads a proper party to an action because the parent acted as a negotiating agent for the railroads, and under the Railway Labor Act, agents bear the same responsibilities and obligations as carriers.

While Plaintiffs' argument suggests that NRLC could be a party to suit under the Railway Labor Act, that argument does not persuade the Court that personal jurisdiction over NRLC in Pennsylvania is appropriate. Personal jurisdiction based on an agency relationship over an unin-

corporated association when its only contact with a forum is the presence of some association members within the forum is dependent upon the "degree of control" exercised by the [association] over its constituents and the extent to which the [association] can be said to act for and on behalf of the [constituent]. *See, e.g., Donatelli*, 893 F.2d at 470–71. In this case, NRLC acted solely as a bargaining agent on behalf of the defendant railroads, some of which operate in and employ people in Pennsylvania. NRLC does not control its Pennsylvania-based members by making employment or other management decisions. Because NRLC does not exercise substantive or a significant degree of control over its constituents, its actions as an agent on behalf of the railroads are not sufficient to support a finding of personal jurisdiction in this case.

b. **Negotiation of the LOI as Basis for Specific Personal Jurisdiction**

A determination of specific personal jurisdiction over a defendant is claim specific, *Remick*, 238 F.3d at 255. However, where the considerations in analyzing jurisdiction do not differ between particular claims, a claim specific analysis is not necessary. *Id.* In this case, Plaintiffs advance the following counts: (1) contract invalidity due to a violation of the Railway Labor Act; (2) breach of the duty of fair representation; (3) common law civil conspiracy; and (4) a request for declaratory judgment that the LOI violates the Railway Labor Act. After considering the substance of each of Plaintiffs' claims, the Court finds that the jurisdictional analysis to be applied to each claim is the same because the allegations share a similar motivation— that is, each claim asserts that NRLC intentionally acted either in violation of a federal statute or in a manner constituting tortious harm. To allow for the exercise of specific personal jurisdiction over a defen-

dant, the defendant must have committed some act "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, *thus invoking the benefits and protections of its laws.*" *Vetrotex*, 75 F.3d at 150 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)) (emphasis added). Plaintiffs argue that this Court may exercise personal jurisdiction over NRLC because NRLC purposefully directed its actions at Pennsylvania, as well as at any other state in which union members affected by the LOI reside. *Oral Arg. Trans.* at 25:10–13. Plaintiffs point out that in negotiating the terms of the LOI, an impact on affected employees of the railroads in any forum would have been apparent to NRLC, *Oral Arg. Trans.* at 26:1–4. Thus, Plaintiffs ask that because NRLC subjected itself to the jurisdiction of this Court through its participation in the LOI, personal jurisdiction be found appropriate in this case.

The Court disagrees with Plaintiffs' assessment of NRLC's contacts because NRLC's contacts with Pennsylvania as they relate to the negotiation and execution of the LOI are too attenuated to allow for the exercise of specific personal jurisdiction in this case. The only relevant activity for which NRLC is alleged to be at risk in this Court is the negotiation and execution of the LOI on behalf of its members, which are the railroad defendants in this case. None of the negotiations nor the execution of the LOI occurred within Pennsylvania. Although certain "future consequences" of the LOI could certainly affect Pennsylvania residents (as well as residents of any number of states wherever they happen to live), when considering such potential "future consequences" in the context of the terms of the LOI and the course of the parties' dealing, it becomes apparent that NRLC was signing

the LOI on behalf of its railroad company members, and was not establishing a "course of dealing" with or for the Plaintiffs within Pennsylvania such that the requirements for specific personal jurisdiction would be met.

Although Plaintiffs argue that the "purposeful direction" of NRLC's actions should be interpreted to apply to any forum in which employees of the defendant railroads reside, the Court notes that in considering such "purposeful direction," a district court must consider whether the defendant purposefully availed itself of the privilege of conducting activities within the forum, suggesting that the exercise of personal jurisdiction includes not only the effect of purposeful actions, but also the advantages and privileges of doing business within the forum. When placed in its proper context, it is apparent that by negotiating and executing the LOI, NRLC did not "purposefully" avail itself of the privileges of doing business within Pennsylvania. As such, the Court concludes that NRLC has not "purposefully directed" its actions at Pennsylvania such that the minimum contacts required to allow for the exercise of specific personal jurisdiction over NRLC to exist in this case.

■■■ The analysis with respect to specific jurisdiction over this claim does not,

however, end here. In its responsive papers and at oral argument, NRLC suggests that the Court consider whether the claim at issue could be likened to an intentional tort, in which case a different test set forth by the Court of Appeals for the Third Circuit would apply.[9] Where a plaintiff alleges that a defendant committed an intentional tort but has not demonstrated the requisite minimum contacts, an alternative test may be applied "to enhance otherwise insufficient contacts with the forum" such that the minimum contacts requirement is satisfied. *Creative Waste Management, Inc. v. Capitol Environmental Services, Inc.*, No. 04–1060, 2004 WL 2384991, *3, 2004 U.S. Dist. LEXIS, at *10 (E.D.Pa. Oct. 22, 2004) (citing *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)). This test, known as the "effects test," was applied by the Court of Appeals for the Third Circuit in *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254 (3d Cir.1998).[10] To meet the *IMO* "effects test," a plaintiff must show that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum *such that the forum was the focal point* of the harm suffered as a result of the tort; and (3) the defendant *expressly aimed* the tortious conduct at the forum, such that the forum

**9.** The Court notes that at oral argument, counsel for Plaintiffs stated that Plaintiffs do not rely on the alternative "effects test" that NRLC proposes, but rather argue that by negotiating and executing an LOI that would clearly affect Pennsylvania employees, NRLC purposefully directed its actions to this forum. *Oral Arg. Trans.* at 25:5–7. However, because NRLC argued that the alleged violation of the RLA would be an intentional act, the Court also will consider the effects test in the interest of completeness.

**10.** In *IMO*, the plaintiff, a multinational corporation with a principal place of business in New Jersey, alleged that a German corporation had tortiously interfered with the sale of

its company to one of the German corporation's competitors. The defendant, which had virtually no intentional contacts with New Jersey, argued that there was no basis for the exercise of personal jurisdiction over it.

In considering the issue, the *IMO* court questioned whether the harm resulting from an intentional business tort, absent other significant contacts, could suffice to confer personal jurisdiction over a defendant. In concluding in the affirmative, the court set forth a three-pronged requirement that a plaintiff must meet to establish that the defendant's act had an effect on the chosen forum. *IMO*, 155 F.3d at 265.

was the *focal point* of the tortious activity. *Id.* at 265–66.

While some of the counts set forth in the Complaint allege a violation of federal statute, rather than an intentional tort,[11] the argument underlying those claims that the LOI is unenforceable because, by its terms, it violates a federal statute, suggests an element of intent that is analogous to an intentional tort. Thus, the first prong of the test may, for purposes of this analysis, be met.

The second prong of the test is whether Pennsylvania would have been the focal point of the harm suffered as a result of the alleged violation. NRLC argues that the second prong of the effects test has not been met because Plaintiffs have not established that the brunt of the harm occurring as a result of the alleged violation was felt in Pennsylvania. NRLC specifically argues that because the LOI applies in the same way to employees all across the country who would be affected by it, Plaintiffs cannot establish that the brunt, or focal point, of the harm will be felt in Pennsylvania.[12] *Oral Arg. Trans.* at 10:8–19. In response, Plaintiffs argue that the negotiation and execution of the LOI by NRLC constituted a purposeful direction of NRLC's actions at Pennsylvania because the Plaintiffs, including the Brotherhood, reside or do business within the Commonwealth and that therefore the

harm has been felt in this forum. *Oral Arg. Trans.* at 29:16–20.

The Court finds that Plaintiffs have met the second prong of the effects test. Each of the individual Plaintiffs resides in the Commonwealth of Pennsylvania and would have experienced the brunt of the harm alleged there. Although NRLC argues that Pennsylvania was not the *only* intended target of the effect of the LOI, the Court finds that the fact that a harmful effect would be felt within Pennsylvania is sufficient to meet the second prong of the effects test.

The third and final prong of the effects test is whether the defendant expressly aimed its tortious conduct at Pennsylvania, such that Pennsylvania was the focal point of the tortious activity. Unlike the second prong, which focuses on where the harmful *effect* was felt, the third prong requires the Court to focus where the actor *intended* the harm to be felt. NRLC argues that the third prong of the effects test has not been met because the LOI is national in scope, and was never intended to target Pennsylvania alone. *Oral Arg. Trans.* at 12:13–19. Plaintiffs do not respond to this argument directly, but rather urge that the Court find personal jurisdiction appropriate under the "purposeful direction" test.[13]

The Court of Appeals for the Third Circuit has held that in order to meet the third prong of the effects test, a plaintiff

---

11. Counsel for NRLC stated at oral argument that he was not sure whether a violation of the RLA could be construed as an intentional tort. As stated in Note 9, Plaintiffs do not assert that the alleged violation is an intentional tort.

12. At oral argument, counsel for NRLC acknowledged that this prong of the test might be met as to the individual plaintiffs, in that they would necessarily experience the brunt of the harm alleged in Pennsylvania because they live here. NRLC argues, however, that

the institutional plaintiff cannot establish that it experienced the brunt of such harm only in Pennsylvania. Implicit in such an argument is that Pennsylvania could, therefore, not be a "focal point." *Oral Arg. Trans.* at 11:23–25; 12:1–5.

13. Because the Court has already addressed and rejected the propriety of jurisdiction under the "purposeful direction" test above, its reasoning and analysis as to that test will not be discussed here.

must establish that a defendant's allegedly tortious activity was explicitly directed at the particular plaintiff, and not merely that the defendant's actions had a negative impact on the plaintiff. *See Remick*, 238 F.3d at 260–61 (finding personal jurisdiction not appropriate with respect to a defamation claim where allegedly defamatory documents had been distributed nationally, and not just in Pennsylvania, but also finding personal jurisdiction appropriate with respect to a tortious interference with contract claim where defendants' conduct was "expressly aimed at injuring the Plaintiff where he lives and works"); *see also Creative Waste Management, Inc. v. Capitol Environmental Services, Inc.*, No. 04–1060, 2004 WL 2384991, \*6, 2004 U.S. Dist. LEXIS 21497, at \*22 ("[t]here is a critical difference between an act which has an effect in the forum and one directed at the forum itself ... absent some conduct ... directed at Pennsylvania rather than simply directed at plaintiff, Pennsylvania is not a reasonably foreseeable forum"); *Directory Dividends, Inc. v. SBC Communications, Inc.*, No. 01–1974, 2003 WL 22533708, \*5, 2003 U.S. Dist. LEXIS 19560, at \*17 (E.D.Pa. Oct. 23, 2003) (concluding that alleged tortious conduct focused on plaintiff's national business was not expressly directed at Pennsylvania).

After considering the facts of the present case, the Court concludes that the third prong of the effects test has not been met because Plaintiffs have not established that NRLC expressly intended harm to occur in Pennsylvania. The parties do not dispute that the terms of the LOI in question certainly will have an effect in Pennsylvania because it affects Plaintiffs resident here. However, based on the nature of the LOI, in that it involves railroad entities across the country, there is no evidence that NRLC expressly intended for any harm alleged to arise out of the LOI toward Pennsylvania. For this rea-

son, the exercise of personal jurisdiction over NRLC fails under the *Imos* effects test. Because the Court finds that under either the "purposeful direction" test or the *Imos* "effects test," there is no basis for personal jurisdiction over NRLC, NRLC will be dismissed from this case.

**CONCLUSION**

For the reasons stated above, the Court finds that there is no basis upon which personal jurisdiction can be exercised over NRLC, and the Motion to Dismiss the Complaint as to NRLC will be granted. An appropriate Order follows.

### *ORDER*

AND NOW, this 9th day of June, 2005, upon consideration of the Motion to Dismiss for Lack of Personal Jurisdiction filed by National Railway Labor Conference (Docket No. 12), the response thereto (Docket No. 13), and after oral argument on the Motion, it is ORDERED that the Motion is GRANTED. All claims against National Railway Labor Conference are hereby dismissed, and the Clerk of Courts is instructed to remove National Railway Labor Conference as a defendant from this case.