PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2896
_____


CONTROL SCREENING LLC

v.

TECHNOLOGICAL APPLICATION AND PRODUCTION
COMPANY (TECAPRO), HCMC-VIETNAM,
                                    Appellant


_____


On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-11-cv-00491)
District Judge: Honorable Faith S. Hochberg
_____

Argued May 7, 2012

Before: SLOVITER, ROTH, Circuit Judges, and POLLAK,
District Judge[*]

(Opinion filed: July 26, 2012)
_____

_____

        [*] Honorable Louis H. Pollak, Senior Judge of the
United States District Court for the Eastern District of
Pennsylvania, sitting by designation.  Judge Pollak died on
May 8, 2012; this opinion is filed by a quorum of the court.
28 U.S.C. § 46 and Third Circuit IOP 12.1(b).

Lauren E. Komsa  (Argued)
Anthony J. Pruzinsky
Hill Rivkins
New York, NY  10006

    Attorneys for Appellant

Donald P. Jacobs   (Argued)
Budd Larner
Short Hills, NJ  07078

    Attorney for Appellee

————

OPINION OF THE COURT
————

SLOVITER, *Circuit Judge*.

This dispute involves New Jersey-based Control Screening, LLC and Vietnam-based Technological Application and Production Company, HCMC-Vietnam ("Tecapro").  Control Screening and Tecapro disagree about the proper interpretation of an arbitration forum selection clause in their contract.  The District Court granted Control Screening's motion and petition to compel arbitration in New Jersey, and Tecapro appealed.

## I.

Control Screening manufactures and sells X-ray and metal detection devices for use in public facilities around the world.  Tecapro is a private, state-owned company that was formed by the Vietnamese government for the purpose of introducing advanced technologies into the Vietnamese market.

In April 2010, Tecapro entered into a contract with Control Screening for the purchase of twenty-eight customized AutoClear X-ray machines with a total purchase price of $1,021,156.  Each party now alleges that the other party has breached its obligations under the contract.  The contract provides that:

2

In the event all disputes are not resolved, the disputes shall be settled at International Arbitration Center of European countries for claim in the suing party's country under the rule of the Center. Decision of arbitration shall be final and binding [sic] both parties.

App. at 51. Tecapro initiated arbitration proceedings in Belgium under the Belgian Judicial Code in November 2010. In December 2010, Control Screening notified Tecapro of its intention to commence arbitration proceedings in New Jersey.

In January 2011, Control Screening filed its petition to compel arbitration in the United States District Court for the District of New Jersey. The petition requested that the District Court compel arbitration of all disputed issues in New Jersey, appoint an arbitrator named by Control Screening, designate arbitration rules chosen by Control Screening, enjoin Tecapro from proceeding with arbitration in Belgium, and award attorney's fees and costs to Control Screening. Tecapro opposed the petition, arguing that the contract provided for arbitration in Europe and that, in any event, the District Court lacked personal jurisdiction over it.

The District Court determined that it had subject matter jurisdiction under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), Sept. 30, 1970, 21 U.S.T. 2517, and that it had personal jurisdiction over Tecapro because, *inter alia*, the company had "sufficient contacts with New Jersey that relate to and arise out of the 2010 contract." App. at 6 n.7.

The Court concluded that "the only reasonable interpretation of the arbitration clause is that Tecapro could have sought to arbitrate in Vietnam and Control Screening in New Jersey. The latter is what happened in this case and therefore the arbitration shall proceed in New Jersey." App. at 6 n.8. The District Court therefore granted Control Screening's request to compel arbitration. Tecapro appeals.

**II.**

3

Section 16(a)(3) of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides that "[a]n appeal may be taken from . . . a final decision with respect to an arbitration that is subject to this title." Where, as here, "the District Court has ordered the parties to proceed to arbitration, and dismissed all the claims before it, that decision is 'final' within the meaning of § 16(a)(3), and therefore appealable." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000). Accordingly, under 28 U.S.C. § 1291, this court has jurisdiction to hear Tecapro's appeal.

We review a district court's decision with respect to personal jurisdiction *de novo* but review factual findings made in the course of determining personal jurisdiction for clear error. *See Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 176 (3d Cir. 2006). We review questions concerning the applicability and scope of an arbitration agreement *de novo*. *See Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009).

"A district court decides a motion to compel arbitration under the same standard it applies to a motion for summary judgment." *Id.* "The party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise." *Id.* (internal quotation marks and citation omitted).

### III.

Tecapro argues that the District Court erred by: (1) improperly exercising personal jurisdiction over it; (2) failing to consider Tecapro's facts and evidence; (3) placing the burden of proof on Tecapro rather than Control Screening; (4) refusing to hold an evidentiary hearing; and (5) finding that the parties had agreed to arbitrate in New Jersey rather than in Europe.

### A. Personal Jurisdiction

Under New Jersey's analog to a long-arm statute, N.J. Court Rule 4:4-4, a district court may assert personal jurisdiction over nonresidents to the extent permitted by the

4

Due Process Clause of the Fourteenth Amendment. *See Telcordia Tech*, 458 F.3d at 177. A district court may exercise *in personam* jurisdiction over a nonresident so long as the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted). "[T]he plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992).

Personal jurisdiction may be either general or specific. "Specific jurisdiction is established when a non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities."[1] *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). In a contract case, such as this one, Control Screening must establish that Tecapro's contacts with the forum were instrumental in either the formation or the breach of the contract. *Gen. Elec. Co.*, 270 F.3d at 150.

The relationship between Tecapro and Control Screening began in 2006 when Tecapro submitted a purchase order to Control Screening. Vu Khac Tien, then Vice Director of Tecapro, wrote to Control Screening President and CEO Brad Conway "that this will be the first purchase of many . . . ." App. at 303. Vu Khac Tien continued: Tecapro had "devoted six months of effort and expense to promoting Control Screening and AutoClear scanners . . . helping to establish your products in our markets." *Id.* Vu Khac Tien also noted that Tecapro had sent one of its employees to a Control Screening factory in New Jersey for training. In closing, Vu Khac Tien stated that Tecapro representatives were "willing to come to New Jersey ASAP if more discussion is needed." App. at 307.

---

[1] Because we find there is specific jurisdiction, we need not discuss general jurisdiction.

5

Only a few months later, Tecapro submitted a second purchase order to Control Screening. Then, in August 2007, Vu Khac Tien informed Control Screening that Tecapro intended to make yet another purchase. Tecapro also ordered individual scanner parts and upgrades from Control Screening in New Jersey on multiple occasions. The relationship between Tecapro and Control Screening flourished until Tecapro, at its request, became the exclusive distributor of Control Screening products in Vietnam in 2009.

In April 2010, Tecapro and Control Screening entered into the contract at issue here. The contract was signed by Conway in New Jersey. Tecapro's application for an irrevocable letter of credit in connection with the April 2010 contract named as payment beneficiary "Control Screening LLC, 2 Gardner Road Fairfield, New Jersey." App. at 335. Additionally, several of the X-ray scanner components were shipped from Control Screening's products department in New Jersey. Finally, Vu Khac Tien sent at least eleven e-mails regarding the April 2010 contract to Conway or Control Screening Vice President Ken Voigtland, both of whose offices were located in New Jersey.[2]

Tecapro relies on this court's decision in *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.*, 75 F.3d 147 (3d Cir. 1995), to argue that "specific jurisdiction cannot be asserted over a commercial buyer that has only tangential contact with the seller in the seller's state." Appellant's Br. at 18. In *Vetrotex*, however, the only contacts between the defendant and the forum state were "some telephone calls and letters." 75 F.3d at 152. Furthermore, the court in *Vetrotex* did not consider the parties' prior dealings in its specific jurisdiction analysis because thirteen months had passed between the termination of the parties' previous business relationship and the beginning of the new

_____

[2] The District Court found that in 2010 there were "at least 50 emails sent back and forth between Tecapro and Control Screening in New Jersey." App. at 6 n.7. We focus here on the eleven of those fifty e-mails sent directly from Tecapro's Vice Director Vu Khac Tien to two of Control Screening's New Jersey-based executives, Conway and Voigtland.

6

relationship at issue in that case, and because that previous relationship had been expressly terminated. *Id.* at 153.

Here, by contrast, Tecapro's contacts with New Jersey were not limited to communications such as "emails, fax and skype," App. at 6 n.7, but included the manufacture and assembly of major scanner components as well as the design of scanner software, all in New Jersey. *See* App. at 317. Additionally, the April 2010 contract marked the continuation of an uninterrupted four year business relationship between Tecapro and Control Screening, culminating in Tecapro becoming the exclusive distributor of Control Screening products in Vietnam. "It is these factors – prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing – that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Burger King Corp.*, 471 U.S. at 479.

There is ample evidence in this record that Tecapro purposefully directed its activities at New Jersey, and that virtually all of those activities arose from or related to the contract between the parties. Moreover, the exercise of personal jurisdiction over Tecapro is neither unfair nor unjust.[3] Thus, we conclude that the District Court correctly determined that Tecapro's activities in New Jersey adequately supported a finding of specific jurisdiction.[4] *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

---

[3] Tecapro argues that the "District Court abused its discretion in refusing to hold an evidentiary hearing." Appellant's Br. at 31 (emphasis removed). Tecapro, however, cites no authority that would have required the District Court to hold an evidentiary hearing before ruling on the petition nor did Tecapro even request a hearing. The District Court cannot have abused its discretion for "refusing" to do something that it was not required to do and that Tecapro never requested.

[4] The District Court did not specify the burden of proof employed in its personal jurisdiction analysis. In a case such as this one, where the defendant has raised the issue of personal jurisdiction, the plaintiff must prove, by a

B.  Arbitration Forum

The parties agree that their contract dispute should be arbitrated but do not agree on where arbitration should take place.  The arbitration clause at issue provides in relevant part that "disputes shall be settled at International Arbitration Center of European countries for claim in the suing party's country under the rule of the Center."  App. at 51.  The "International Arbitration Center of European countries" does not exist.  The central question in this case, therefore, is how to interpret this clause in order to determine the appropriate arbitration forum.

In 1958, the United Nations Economic and Social Council adopted the New York Convention.  In 1970, the United States acceded to the treaty, and Congress passed Chapter 2 of the FAA, 9 U.S.C. § 201-208, implementing the Convention.  The Convention requires contracting states to recognize written arbitration agreements concerning subject matter capable of arbitration.  *See* Art. II(1).  The United States, where Control Screening is a citizen, is a signatory to the Convention as is Vietnam, where Tecapro is a citizen.

Section 201 of the FAA provides that the Convention shall be enforced in United States courts.  *See* 9 U.S.C. § 201.  Chapter 2 of the FAA creates two causes of action in federal court:  (1) an action to compel arbitration in accord with the terms of the arbitration agreement, *see* 9 U.S.C. § 206, and (2) an action to confirm an arbitral award made pursuant to an arbitration agreement, *see* 9 U.S.C. § 207.  Article II(3) of the New York Convention contains the "null and void" defense which is available in actions to "refer the parties to arbitration":

---

preponderance of the evidence, that the district court has the authority to exercise personal jurisdiction over the defendant.  *See Carteret Sav. Bank*, 954 F.2d at 146.  This court will affirm the District Court's personal jurisdiction determination because Control Screening's evidence is sufficient to establish, by a preponderance of the evidence, that the District Court properly exercised personal jurisdiction over Tecapro.

8

The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

Art. II(3).

"[A]n agreement to arbitrate is 'null and void' only (1) when it is subject to an internationally recognized defense such as duress, mistake, fraud, or waiver, or (2) when it contravenes fundamental policies of the forum state." *Rhone Mediterranee Compagnia Francese di Assicurazioni E Riassicurazoni v. Lauro*, 712 F.2d 50, 53 (3d Cir. 1983) (citation omitted) (interpreting Article II(3) of the New York Convention). However, "[t]he 'null and void' language must be read narrowly, for the signatory nations have jointly declared a general policy of enforceability of agreements to arbitrate." *Id.*

In this case, the parties mistakenly provided that disputes were to be settled *at* "International Arbitration Center of European countries," which is non-existent. "At" is a preposition defined, in part, as "presence or occurrence in a particular place." *See* Webster's Third New International Dictionary Unabridged 136 (1993). Thus, the parties agreed to arbitrate in a particular place – namely the "International Arbitration Center of European countries" – that does not exist; a result that could have come about only through mistake.[5]

---

[5] Both the District Court and Control Screening conclude that the phrase "for claim in the suing party's country" can only reasonably be interpreted as authorizing arbitration in the suing party's country. When read in isolation, that language is susceptible to such an interpretation. However, when read in the context of the arbitration clause as a whole, the District Court's interpretation is in direct conflict with the preceding language – "the disputes shall be settled at International Arbitration Center of European countries." Furthermore, the record

9

Since the parties mistakenly designated an arbitration forum that does not exist, the forum selection provision of the arbitration agreement is "null and void" under Article II(3). *See Rosgoscirc v. Circus Show Corp.*, No. 92-Civ.-8498, 1993 WL 277333, at *4 (S.D.N.Y. July 16, 1993) (invalidating an arbitration forum selection provision as "null and void" under Article II(3) of the New York Convention where the parties agreed to arbitrate at "the International Arbitration in the Hague (the Netherlands)," a non-existent entity). Even though the forum selection portion of the arbitration clause is "null and void," there is sufficient indication elsewhere in the contract of the parties' intent to arbitrate, meaning that the parties' agreement to arbitrate remains in force. *See, e.g.*, *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 890 (6th Cir. 2002) ("The validity of the arbitration agreement, therefore, turns on whether the agreement to arbitrate all disputes was separate and severable from the [invalid] forum selection clause."). Section 11.0 of the contract is entitled "ARBITRATION." App. at 50. The second sentence of Section 11.2 of the contract states that: "Decision of arbitration shall be final and binding [sic] both parties." App. at 51. Finally, Section 11.3 of the contract provides that the losing party shall bear "[a]ll expenses in connection with the arbitration." *Id.* Furthermore, both parties have expressed a willingness to arbitrate their dispute notwithstanding the uncertain meaning of the forum selection provision. Thus, we find that the invalid forum selection provision is severable from the rest of the arbitration agreement.

---

indicates that both parties understood that arbitration would take place in Europe. For instance, in an email to Vu Khac Tien, Control Screening President and CEO Brad Conway stated: "We remain patient as always, and awaiting your choice from among the above not-so-bad alternatives to get this long delayed and thin-margin deal completed, or to move on we suppose to elaborate, costly and unfortunate dispute resolution ultimately in Western Europe." App. at 720. Though the parties apparently intended to arbitrate in Europe, those intentions were nullified by virtue of their mutual mistake in selecting a non-existent arbitration forum.

10

Because the forum selection provision is "null and void," the otherwise valid arbitration agreement is treated as if it does not select a forum. Under Section 206 of the FAA, a district court is empowered to "direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206. To the extent that it does not conflict with Chapter 2, Chapter 1 of the FAA applies to international arbitration agreements. *See* 9 U.S.C. § 208. Section 4 of Chapter 1 provides that the arbitration hearings and proceedings "shall be within the district in which the petition for an order directing such arbitration is filed."[6] 9 U.S.C. § 4; *see also Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.*, 499 F.2d 1391, 1394 (3d Cir. 1974) (Section 4's "requirement that arbitration take place in the district court where the petition is filed is clear and unequivocal").

Thus, when an arbitration agreement lacks a term specifying location, a district court may compel arbitration only within its district. *See Jain*, 51 F.3d at 690-91 (holding that a district court has the power to compel arbitration in the

---

[6] In *PaineWebber Inc. v. Faragalli*, this court held that an action to compel arbitration under Section 4 of the FAA "accrues only when the respondent unequivocally refuses to arbitrate." 61 F.3d 1063, 1066 (3d Cir. 1995) (interpreting Section 4's language that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement"). That threshold requirement, however, has only been applied by this court, and by other courts of appeal applying similar requirements, to domestic arbitration agreements. A district court's primary authority to compel arbitration in the international context comes from 9 U.S.C. § 206, rather than from 9 U.S.C. § 4. *PaineWebber*'s threshold requirement, therefore, does not apply to international arbitration agreements governed by the New York Convention. *Cf. Jain v. de Méré,*, 51 F.3d 686, 691 (7th Cir. 1995) ("[W]hile the provision of § 4 allowing a court to order arbitration in its own district should apply to an action under chapter 2 [of the FAA], its jurisdictional limits should not.").

district where suit was brought where the international agreement failed to specify an arbitration forum); *see also Bauhinia Corp. v. China Nat'l Mach. & Equip. Imp. & Exp. Corp.*, 819 F.2d 247, 249-50 (9th Cir. 1987) (same). Because the District Court here compelled arbitration within its own district (even though it based its decision on other grounds), this court will affirm the District Court's Order. *See Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000) ("We may affirm the District Court on any grounds supported by the record.").

## IV.

Accordingly, we will affirm the judgment of the District Court compelling arbitration to proceed in New Jersey.