**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 15-2575

_____

MILAD ALLAHAM,
                              Appellant

v.

FADI NADDAF, ELIAS NADAF AND MAJD NADAF

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5:13-cv-03564)
District Judge:  Honorable Edward G. Smith

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 8, 2015

Before:  FUENTES, SHWARTZ and VAN ANTWERPEN, *Circuit Judges*.

(Opinion Filed:  December 17, 2015)

_____

OPINION[*]

_____

    [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7, does not constitute binding precedent.

VAN ANTWERPEN, *Circuit Judge*.

Appellant Milad Allaham has brought suit in the U.S. District Court for the Eastern District of Pennsylvania against three foreign nationals: Fadi Naddaf, Elias Nadaf, and Majd Nadaf. Allaham sought a default judgment, which the District Court ultimately denied for lack of personal jurisdiction. Allaham now appeals the denial of his Motion for Reconsideration. We will affirm the decision of the District Court.

## I.    Factual Background and Procedural History

### A.    Factual Background

At some time shortly before 2007, Raouaeh Nadaf,[1] Allaham's wife, approached Allaham while at their home in Allentown, Pennsylvania about entering into a partnership to open a jewelry business in the United Arab Emirates ("UAE"). (App. 16a–17a). The partnership was to be with Raouaeh's brothers, three of whom are Appellees. (App. 16a–17a). A fourth brother, Pierre Nadaf, a United States citizen residing in Scranton, Pennsylvania, was also involved in the business and traveled between the UAE

---

[1] The transcript for the evidentiary hearing before the District Court spells Allaham's wife's name as "Arawah" followed by a "(ph)" designation. (App. 51a). The District Court used the same spelling in its opinion. (App. 16a–17a). Allaham's brief indicates that his wife's name is spelled "Raouaeh." This opinion follows the spelling in Allaham's brief since it appears that the District Court's spelling is phonetic and does not reflect the actual spelling. We also note that there is some inconsistency in the spelling of Fadi Naddaf's last name, which in some filings only has one "d," yet in the majority of filings has two "d's." For consistency, we follow the spelling used by the District Court of "Naddaf."

and the United States to purchase jewelry.[2] (App. 17a, 69a–70a). At all times relevant to the present action, Allaham was a United States citizen, residing in Pennsylvania. (Appellant Br. 4). During the same time period, all three Appellees were foreign nationals residing in the UAE. (App. 19a).

Shortly after Raouaeh introduced the partnership idea, Allaham traveled to the UAE to meet with Appellees in person. (App. 17a). After Allaham's visit, he believed that he had entered into an oral agreement with Appellees to be a partner in the business and provided investment capital and merchandise to this end. (App. 17a). From October 2007 through July 2008, Allaham wired approximately $252,000 dollars to Appellees from Pennsylvania bank accounts.[3] During his trip to the UAE, Allaham also gave Appellees various items of jewelry with a combined value of approximately $25,000. (App. 56–57a); (Appellant Br. 6).

---

[2] In order to maintain diversity of citizenship jurisdiction, Allaham did not name Pierre as a Defendant in his complaint. (App. 68a–69a). At the December 2014 evidentiary hearing, Allaham expressed concerns about enforcing a judgment in Abu Dhabi, UAE, where Appellees reside. Allaham indicated that he thought a federal judgment would be more likely to be enforced. (App. 69a). This type of forum shopping does not affect this Court's personal jurisdiction analysis as this is not a situation where the federal court would take the case out of the control of a state court. *Telecordia Tech Inc. v. Telkom SA Ltd.,* 458 F.3d 172, 180 (3d Cir. 2006). To prohibit Allaham from bringing a claim in federal court solely because of the appearance of forum shopping would "ignore[] the maxim that courts generally defer to a plaintiff's choice of forum." *Id.* (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995)).

[3] There was some dispute at the evidentiary hearing about the total amount wired. Allaham's Counsel went through each wire, reading the date, amount, and bank. The Court tallied these to equal $252,000, while Counsel indicated that Allaham's calculations produced a total of $243,000. (App. 53a–56a).

At an unspecified date in 2009, Appellees, through an unidentified intermediary in New York State, told Allaham they did not intend to pursue the partnership. Instead, Appellees said they would return Allaham's money if he travelled to the UAE in two weeks.[4] (App. 58a–59a). Appellees stated that they would return half of the money when he arrived, and the other half at a later date. (App. 59a). Allaham travelled to the UAE at the agreed upon time, but was unsuccessful in efforts to recover his cash or jewelry investment. (App. 59a).

### B.    Procedural History

Allaham filed a complaint for conversion in the Eastern District of Pennsylvania on June 21, 2013.[5] (App. 30a–35a). Allaham filed a proof of service for each defendant, which he claims was done by a process server on September 10, 2013.[6] (App. 36a–38a).

---

[4] While unrelated to the conversion claim, it is notable that around this same time as the events giving rise to the instant action, Allaham and Raouaeh's marriage began to fall apart. (App. 58a, 62a). Either while Allaham was in the UAE attempting to retrieve his investment, or after he returned, Raouaeh took $13,400 out of the couple's joint bank account and violated a custody order by taking their child to Syria. (App. 59a–60a). There has been an ongoing custody case in a local court in Damascus. At the evidentiary hearing, Allaham stated that the present action was partly motivated by his hope that he could use a judgment in the instant action as part of the custody negotiations. (App. 60a, 82a).

[5] Although the District Court referred to the instant action as a breach of contract claim, Allaham's complaint and civil cover sheet speak in terms of the tort of conversion. (App. 9a, 31a–34a). Allaham's brief uses the term "converted" when describing Appellees actions, yet also states "[t]his is a contract claim" and proceeds with his argument stating "[i]n a contract claim . . ." (Appellant Br. 3, 13). In accordance with Allaham's complaint, we treat the underlying claim as a conversion action.

[6] Judge Edward G. Smith noted that "service probably [was] an issue" but that it was not his "primary concern." (App. 49a). Judge Smith stated that while having the process server sign that he personally served Appellees is "not permitted under the rule . . . it can be permitted if [the Judge] authorize[s] it to be permitted," which Judge

4

On March 20, 2014, Allaham filed a Motion for Entry of Default Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 55(b)(1), along with a request that the clerk of court enter a default against each Defendant pursuant to Rule 55(a). (App. 39a–46a). The District Court (Smith, E.G., J.),[7] denied the motion without prejudice and the clerk instructed Allaham to separately file a request for the entry of default, and then

Smith said he was inclined to do. (App. 49a). Although not dispositive for personal jurisdiction, it seems likely that Appellees did not receive some of the documents in this matter. The notices of reassignment to Judge Smith mailed to the Defendants were returned because the addresses were incomplete. (App. 2a).

Federal Rule of Civil Procedure 4(f), which governs "serving an individual in a foreign country," states that:

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:
>
> > (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
> >
> > (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
> >
> > > (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
> > >
> > > (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
> > >
> > > (C) unless prohibited by the foreign country's law, by:
> > >
> > > > (i) delivering a copy of the summons and of the complaint to the individual personally; or
> > > >
> > > > (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
> >
> > (3) by other means not prohibited by international agreement, as the court orders.

[7] This matter, which was originally assigned to Judge Joel H. Slomsky, was reassigned to Judge Smith in April 2014. (App. 10a).

5

a Motion for Default Judgment, in the appropriate order. (App. 10a). A week later, Allaham made a second request for the entry of default, which the clerk entered against each Defendant. (App. 10a). The District Court ordered Allaham to file a Renewed Motion for Default Judgment, which he did on August 29, 2014. (App. 10a). A hearing was scheduled, prior to which Allaham was invited to provide the District Court with briefing supporting personal jurisdiction over Appellees. (App. 27a n.1). Allaham submitted a brief arguing that personal jurisdiction existed prior to the hearing. (Plaintiff's Long-Arm Statute Br.). Following the default judgment hearing on December 12, 2014, which focused almost exclusively on Appellees' contacts with Pennsylvania, the District Court denied Allaham's motion and dismissed the action for lack of personal jurisdiction. (App. 28a–29a).

Allaham filed a Motion for Reconsideration pursuant to Rule 59(e). The District Court denied this motion in an order and memorandum opinion issued on May 28, 2015. (App. 8a–25a). This timely appeal followed. (App. 6a–7a). As of December 8, 2015, Appellees have not responded to any documents served or filed in this matter.

## II.     Discussion[8]

### A.     Standard of Review

This Court reviews the denial of a motion for reconsideration for abuse of discretion. *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 673 (3d Cir. 1999). This Court exercises de novo review over a district court's dismissal for lack

---

[8] The District Court had jurisdiction pursuant to 28 U.S.C § 1332(a)(2). We have jurisdiction to review final orders of a district court pursuant to 28 U.S.C. § 1291.

of personal jurisdiction. *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010). Factual findings made by a district court in determining personal jurisdiction are reviewed for clear error. *Control Screening LLC v. Tech. Application & Prod. Co.,* 687 F.3d 163, 167 (3d Cir. 2012).

### B. Analysis

As an appeal from a denial of a Motion for Reconsideration, stemming from the denial of a Motion for Default Judgment, this Court's role is to determine whether the District Court erred based on the reason Allaham asserts in his Rule 59(e) motion. There are limited grounds on which a court will grant a Rule 59(e) Motion for Reconsideration. To succeed on a Rule 59(e) motion, the moving party must present one, or more, of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the [motion]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 848–49 (3d Cir. 2014) (quoting *Max's Seafood Cafe ex rel. Lou-Ann, Inc.*, 176 F.3d at 677). Allaham argues that his Motion for Reconsideration should have been granted since the District Court "failed to recognize that the defendants engaged in certain activities directed at Pennsylvania that supported an exercise of such jurisdiction." (App. 11a). The entry of default judgment is not a matter of right, but rather a matter of discretion, which "is not without limits." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180–81 (3d Cir. 1984). Because the exercise of this discretion is contingent on a district court's determination that it can exercise personal jurisdiction over each defendant, and as discussed *infra*, the District Court did not err in

7

denying Allaham's Motion for Reconsideration. *See Budget Blinds, Inc. v. White*, 536 F.3d 244, 259 (3d Cir. 2008) (stating that if a court does not have personal jurisdiction, the entry of a default judgment is "not merely erroneous; [but] never should have been entered in the first place"); *see also Stranahan Gear Co., Inc. v. NL Indus., Inc.*, 800 F.2d 53, 56, 59 (3d Cir. 1986) (affirming district court's striking of default judgment entered against party over whom the court did not have personal jurisdiction).

### 1. Denial of Motion for Default Judgment

Before a plaintiff can obtain a default judgment pursuant to Rule 55(b), a plaintiff must secure an entry of default per Rule 55(a). 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2682, at 13 (3d ed. 1998). Once default is entered against a specific defendant, Rule 55(b) allows the plaintiff to request that the clerk or the court enter a default judgment against that defendant, depending on whether the claim is for a sum certain. *Id.* While entry of a default judgment is largely within a district court's discretion, three factors control this determination: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

While unlike subject matter jurisdiction, a court generally may not raise personal jurisdiction *sua sponte*, when a default judgment is requested, a court is required to make a threshold determination regarding any jurisdictional defects. *See Bolden v. Se. Pennsylvania Transp. Auth.*, 953 F.2d 807, 812 (3d Cir. 1991) (citing *Mansfield, Coldwater & Lake Michigan R.R. v. Swan*, 111 U.S. 379, 382 (1884)) (stating that while

this Court does not address issues that the parties have ignored, "[w]e are always obligated to ensure that we have jurisdiction over the cases that come before us"). If a court lacks personal jurisdiction over a defendant, the court does not have jurisdiction to render a default judgment, and any such judgment will deemed void. *Budget Blinds, Inc.*, 536 F.3d at 258 (citing *Marshall v. Bd. of Educ.*, 575 F.2d 417, 422 (3d Cir. 1978)); *see Hanson v. Denckla*, 357 U.S. 235 (1958) (citing *Pennoyer v. Neff*, 95 U.S. 714, 733 (1877)) ("With the adoption of [the Fourteenth] Amendment, any judgment purporting to bind the person of a defendant over whom the court had not acquired in personam jurisdiction was void within the State as well as without."). In the absence of an evidentiary hearing, a plaintiff's complaint need only establish a *prima facie* case of personal jurisdiction. *Eurofins Pharma US Holdings*, 623 F.3d at 155; *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). However, at an evidentiary hearing before a district court, a plaintiff bears the burden of proving that the court has personal jurisdiction over the defendant by a preponderance of the evidence. *Control Screening LLC*, 687 F.3d at 167; *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

In the instant case, the District Court requested counsel be prepared to discuss the basis for personal jurisdiction at the hearing precisely because of the Court's concern that the allegations in the complaint did not satisfy the *prima facie* standard.[9] (App. 16a &

---

[9] The District Court's order scheduling the evidentiary hearing stated that "[c]ounsel shall be prepared to address the following: 1) The basis for the court's personal jurisdiction over the defendants." A footnote appended to this direction stated "[t]he plaintiff fails to include any allegations in the complaint relating to where the

n.1, 27a). When determining jurisdiction in a claim for the tort of conversion, this court "approache[s] each case individually and take[s] a 'realistic approach' to analyzing a defendant's contacts with a forum." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 99–100 (3d Cir. 2004) (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1224 (3d Cir. 1992)). Until an evidentiary hearing is held, a district court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, FA*, 954 F.2d at 142 n.1 (citations omitted). At the evidentiary hearing Allaham had "the burden of demonstrating the facts that establish[ed] personal jurisdiction." *Metcalfe*, 566 F.3d at 330 (alteration omitted) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). The evidence Allaham presented at the hearing failed to satisfy this burden.

### 2.     *Personal Jurisdiction*

We have stated that "[a] district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." *Metcalfe*, 566 F.3d at 330 (citations omitted); *see* Fed. R. Civ. P. 4(k)(1)(A) (authorizing the exercise of "personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"). In a state such as Pennsylvania, where the long-arm statute [10] allows the

---

parties' purported transaction occurred. The plaintiff is invited to provide this information to the court in writing prior to the hearing." (App. 27a).

[10] Subsection (a) of Pennsylvania's long-arm statute states in relevant part, "A tribunal of this Commonwealth may exercise personal jurisdiction over a person . . . who acts directly or by an agent, as to a cause of action or other matter arising from such person." 42 Pa. Cons. Stat. § 5322. Subsection (b) states:

exercise of personal jurisdiction to the full extent permitted by the Constitution, the standard for a federal court sitting in diversity in Pennsylvania is whether a "defendant ha[s] 'minimum contacts,'" such "that the "exercise of jurisdiction comport with 'traditional notions of fair play and substantial justice.'" *Remick*, 238 F.3d at 255 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two distinct theories under which personal jurisdiction can arise: general and specific. *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994). A court has general jurisdiction when a defendant has "continuous and systematic" contacts with the forum state. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (internal quotation marks omitted). A court has specific jurisdiction when a plaintiff's claim arises from a defendant's actions within the forum state, such that the defendant could "reasonably anticipate being haled into [the state's] court[s]." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.,* 75 F.3d 147, 151 (3d Cir. 1996) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)) (internal quotation marks omitted).

### a. General Jurisdiction

The District Court correctly determined that Appellees' contacts with Pennsylvania, as alleged by Allaham, are insufficient to establish general jurisdiction.

---

In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to [bases for personal jurisdiction over] persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

(App. 18a–19a). For general jurisdiction, the plaintiff's claim need not be related to a defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984). As the District Court noted, the Supreme Court has indicated that "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." (App. 19a) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011)) (internal quotation marks omitted). Domicile is not the exclusive means by which to establish general jurisdiction. However, if as the District Court observed here, a defendant's contacts "plainly [do] not approach" the quantity required for general jurisdiction, this Court need not inquire as to the other means by which a defendant can satisfy general jurisdiction. (App. 19a) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 n.19 (2014)) (internal quotation marks omitted).

The District Court characterized the Long-Arm Statute Brief Allaham provided pre-hearing as having "the thrust of a general jurisdiction argument." (App. 18a). The brief did not attempt to demonstrate a connection between any of Appellees' contacts with Pennsylvania and the present matter. Rather, the brief asserted that Pierre's trips between the United States and UAE were a fundamental part of the partnership and provided the quantity of contacts necessary for general jurisdiction. (Appellant Br. 14–15). Relying solely on an unpublished secondary source,[11] Allaham maintained that the

---

[11] Paul Dubinsky, *The Reach of Doing Business Jurisdiction and Transacting Business Jurisdiction Over Non-U.S. Individuals and Entities* (Hague Conference Private Int'l Law Working Doc. Series No. 67, 1998). In his brief on the reach of Pennsylvania's long-arm statute Allaham argues that it is well established that once a defendant is doing

presence of Pierre, as an agent of Appellees in the forum state permitted the exercise of personal jurisdiction. (App. 20a) (citing Plaintiff's Long-Arm Statute Br. 2–4). As the District Court correctly noted, Allaham failed to present facts that established Pierre was a bona fide agent, whose "actions would have been imputed to the individual defendants as opposed to the partnership, let alone whether Pierre was even in a position where his actions could be imputed to others." (App. 20a). Allaham indicated in his complaint, and at the evidentiary hearing, that Appellees are all domiciled in the UAE and provided no other evidence indicative of "continuous and systematic contacts" with Pennsylvania. (App. 30a, 51a).

### b. *Specific Jurisdiction*

Based on Appellees' contacts with Pennsylvania, as alleged on the record, Allaham has not satisfied his burden of establishing specific jurisdiction. To satisfy the federal due process limits adopted by the Pennsylvania long-arm statute, a defendant's minimum contacts are examined in relation to "the nature of the interactions and type of jurisdiction asserted." *Telecordia Tech Inc.,* 458 F.3d at 177. When assessing if due process is met, "the relationship among the defendant, the forum, and the litigation" is crucial. *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). For specific jurisdiction, this Court has stated due process necessitates the plaintiff satisfy three requirements. First, the

---

business in a state, they are subject to suit in that state. (Plaintiff's Long-Arm Statute Br.). Without reaching the merits of this assertion, we note that this argument presupposes that Allaham has established facts supporting the assertion that Appellees were doing business in Pennsylvania. As the District Court stated, Allaham has failed to articulate facts demonstrating that Appellees were actually doing business in Pennsylvania, undermining Allaham's argument. (App. 23a).

plaintiff must demonstrate that the defendant "purposefully directed [its] activities at the forum." *O'Connor*, 496 F.3d at 317 (alteration in original) (internal quotation marks omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros*, 466 U.S. at 414). Third, if the plaintiff satisfies the first two requirements, "a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'"[12] *Id.* (alteration in original) (quoting *Burger King Corp.*, 471 U.S. at 476) (internal quotation marks omitted).

While the defendant need not be physically present in the forum to establish that the state has personal jurisdiction over a nonresident defendant, the plaintiff must establish that the defendant "purposefully directed . . . or otherwise purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (alteration in original) (citation omitted) (quoting *Hanson*, 357 U.S. at 253). This Court has declined to adopt a bright-line test to determine if a court has specific jurisdiction over a defendant in a tort claim, and instead "approach[es] each case individually." *O'Connor*, 496 F.3d at 320 (quoting *Miller Yacht Sales, Inc.*, 384 F.3d at 99–100) (internal quotation marks omitted). In this inquiry, "mail and wire communications can constitute purposeful contacts when sent into the forum." *Telecordia Tech Inc.*, 458 F.3d at 177 (citing *Burger King Corp.*, 471 U.S. at 476).

---

[12] Since Allaham has failed to establish that Appellees purposefully directed their activities at Pennsylvania or that the present claim arises out of the purported activities, it is not necessary for this Court address the third step and look at the so-called "fairness" or "reasonableness" factors set forth by the Supreme Court in *World-Wide Volkswagen Corp.*, 444 U.S. at 292.

14

Even viewing the long-arm brief as asserting a specific jurisdiction argument, a reading which the District Court noted "would have taken a generous interpretation," Allaham was unsuccessful in articulating facts that establish purposeful availment on the part of Appellees. (App. 19a). As the District Court aptly noted, "the factual nature of the claim was not fleshed out in any more detail" in Allaham's long-arm brief than in the initial complaint. (App. 16a). In contrast to his earlier general jurisdiction argument, Allaham's Motion for Reconsideration asserted specific jurisdiction based on Appellees' solicitation and acceptance of money from a Pennsylvania resident. (App. 21a). However, at the hearing, the "evidence showed that no defendant had any relevant contact with Pennsylvania," including the solicitation or acceptance of money. (App. 20a). Accordingly, Allaham's claim fails to satisfy due process since "the [Appellees'] conduct and connection with the forum State" are not "such that [they] should reasonably anticipate being haled into court there." *Burger King Corp.*, 471 U.S. at 474 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297) (internal quotation marks omitted).

The District Court's finding that the facts adduced at the hearing do not establish that Appellees directed their efforts at the forum state satisfies the clear error standard of review. Allaham's brief argues that specific jurisdiction is satisfied because Appellees purposefully directed their activities at Pennsylvania by approaching Allaham and entering into a contract with him while he was in the state. (Appellant Br. 10–11). However, as the District Court noted, Allaham testified that none of the Appellees entered the state during the negotiation or formation stages of their oral partnership agreement. (App. 20a). While mail and communications sent by a defendant into a forum

15

state can count as minimum contacts if part of purposeful availment, Allaham does not assert that Appellees ever sent any communications, through any means, into the forum. (App. 20a); *see O'Connor*, 496 F.3d at 317.

The existence of a website that Appellees operate and the presence of advertisements on the Internet for Appellees' jewelry business do not alter our conclusion. (App. 20a). At the hearing Allaham suggested that one could hypothetically order jewelry from Appellees' website and have the item delivered to Pennsylvania via a common carrier. However, Allaham testified in a follow-up question, and states in his appellate brief, that Appellees did not at the time of the alleged agreement, nor do they presently, sell any jewelry in the United States. (App. 17a; Appellant Br. 6). The evidence Allaham now cites from the hearing does not demonstrate that the District Court committed clear error in its factual finding that "no defendant had any relevant contact with Pennsylvania." (App. 20a).

Allaham's reliance on *Segal v. Zieleniec*, the single case cited to support specific jurisdiction in the Motion for Reconsideration,[13] and which Allaham cites again on

---

[13] As the District Court noted in a footnote to its discussion of *Segal*, there are possible procedural issues with Allaham only raising the argument that solicitation and acceptance of money from a Pennsylvania resident establishes personal jurisdiction in his Motion for Reconsideration. (App. 23a n.3). Allaham did not previously raise a specific jurisdiction argument based on *Segal*, even though it appears this was available to him at the time he filed his initial brief. (App. 23a n.3). As this Court has stated, motions for reconsideration "are not to be used as an opportunity to relitigate the case." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). A trial court does not abuse its discretion in denying a motion for reconsideration when the motion is not based on the three proper Rule 59 grounds. *Max's Seafood Cafe ex rel. Lou-Ann, Inc*, 176 F.3d at 678–79.

16

appeal, is misplaced. (App. 21a) (citing No. 13-cv-7493, 2014 WL 2710989 (E.D. Pa. June 16, 2014)). Allaham presents *Segal*, an unreported district court opinion, as "stand[ing] for the proposition that if a person solicits money from a Pennsylvania resident and later accepts that money in forming a contract, that person becomes amenable to specific jurisdiction in Pennsylvania for a breach-of-contract claim." (App. 23a). Unlike the plaintiff in *Segal*, Allaham has failed to provide "evidence to support the notion that the defendants themselves actively solicited money from the plaintiff." (App. 23a). In fact, as the District Court suggests, "[i]f anything, the evidence points in the opposite direction." (App. 23a). In *Segal*, the court's finding that personal jurisdiction was proper over one defendant, but not the other, was dependent on the determination that the defendant solicited and accepted money from a Pennsylvania resident. 2014 WL 2710989, at *4. Allaham has failed to establish that comparable facts exist in the present case. Allaham mischaracterizes the rule *Segal* sets forth, expanding its scope beyond the narrower "further purpose[ful] avail[ment]" of the laws of the forum on the basis of which the *Segal* court found personal jurisdiction. *See id.* As the District Court articulated, *Segal's* use of "further" indicated that the acceptance of money by a Pennsylvania resident was preceded by active solicitation. (App. 23a). Without establishing active solicitation, the present action is distinguishable from both the facts and legal conclusion of *Segal*.

17

Allaham's citation to cases which state that a defendant's initiation of a contact establishes personal jurisdiction in a contract claim is inapposite given the absolute dearth of facts as to how contact was initiated in the present case. (Appellant Br. 13) (citing *Vetrotex Certaineed Corp.*, 75 F.3d at 147); *Shanks v. Wexner*, No. 02-cv-7671, 2003 WL 1343018 (E.D. Pa. Mar. 18, 2003). At the hearing Allaham did not provide any details as to how the agreement was communicated from Appellees to his wife, or his acceptance of Appellees' offer back to them. Allaham only stated that his wife served as an intermediary. (App. 17a). No specific facts as to his wife's role in the formation of the partnership were provided at the hearing, which further calls into question Allaham's insistence that the "Defendants initiated the contact and then used the Plaintiff's wife . . . to cement the deal." (Appellant Br. 14). Because he does not allege any facts in support of this assertion, we are not required to accept as true Allaham's conclusion that Appellees initiated the agreement. *Metcalfe*, 566 F.3d at 330; *Eurofins Pharma US Holdings*, 623 F.3d at 156.

Although Allaham testified at the hearing that two of the brothers traveled to Pennsylvania, he failed to establish the connection between these trips and the present action. When questioned about Appellees' presence in Pennsylvania, Allaham told the District Court that Elias Nadaf had visited the state more than once. (App. 20a). However, Allaham admitted that he did not know why Elias had traveled to Pennsylvania, and could not connect any of these trips to the contract at issue. (App. 20a). Allaham argues that Appellees were "clearly" using Pennsylvania resident Pierre "to get substantial monies from [Allaham]." (Appellant Br. 14). In his pre-hearing brief

18

and appellate brief, Allaham refers to Pierre as an "agent" of the Appellees. (Plaintiff's Long-Arm Statute Br. 2–4; Appellant Br. 15). At no point however, does Allaham attempt to demonstrate how Pierre was in fact an agent. Beyond characterizing Pierre as the Appellees' agent, Allaham does not provide evidence as to why Pierre was acting by operation of law in a position capable of imputing his actions to others. Allaham merely states that Pierre was part of the business along with Appellees. (App. 68a). In light of the Supreme Court's statement that "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction," Allaham's bare legal conclusion of agency fails to establish that Pierre was in fact an agent of the Defendants. *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014). Consequently, Allaham's assertion that Pierre's role as an agent of the Appellees confers specific jurisdiction over Appellees also fails.

The District Court properly denied the Motion for Reconsideration and dismissed the case for lack of personal jurisdiction since Allaham failed to meet the applicable burdens of proof at both the complaint and evidentiary hearing stages.

### III. Conclusion

For the foregoing reasons, we will affirm the order of the District Court dated May 28, 2015.